Weldon, J.,
delivered the opinion of the court:
In the year 1873, the claimant entered into two contracts with the Board of Public Works of the District of Columbia for certain work in the city of Washington, and as the work progressed the auditor of said Board issued to him certificates of the character set forth in the findings of the court.
The Board not being able to pay as the necessities of the claimant required, on the 13th day of January, A. D. 1874, he hypothecated a number of those certificates with Rudolph Blumenbergh, from whom he borrowed the sum of $27,000, giving his note for $30,000, payable in sixty days.
Before the maturity of the note Blumenbergh became involved, closed his place of business, and when claimant sought him he could not be found; and thereupon claimant notified the president and treasurer of the board that he had left certain certificates as collateral with him, and requested that they should not be paid.
At the time he pledged the certificates he indorsed them in blank, and in that condition they were presented to the Board of Audit after its organization in the summer of 1874.
The Board of Public Works ceased to. have any existence after the organization of the Board of Audit.
On the 13th day of October, 1874, the claimant, for the purpose of enforcing his equity in the certificates, commenced a suit for an injunction and relief, in the Supreme Court of the District of Columbia, against the Board of Audit, the Comptroller of the District, the sinking fund commissioner, and Blumen-bergh, alleging that he was the owner of the certificates, and in equity entitled to the proceeds, subject to the amount received by him.
*432 Upon the 23d day of October a restraining order was made as prayed for, restraining Blumenbergh from receiving certificates of the Board of Audit and the Board from issuing certificates founded on those issued by the Board of Public Works, as described in the bill.
All the certificates sued on in this court were embraced in the bill filed in the Supreme Court.
The Board of Audit 'filed a general demurrer, which was sustained, and an order entered on the 6th day of November, A. D. 1874, discharging the restraining order and denying the injunction “as respects the members of the Board of Audit.”
As the findings of the court do not show that Nos. 3096, 3097, and 3098 were hypothecated with Blumenbergh, and No. 3095 being eliminated from this case by the consent of the claimant’s attorney, there is left for the purpose of this adjudication Nos. 222, 224, 225, 227, 228, 229, 3099, 3100, and 3207, making in the aggregate the sum of $36,637.26.
The suit of the claimant is based upon the theory that the certificates of the Board of Public Works were not negotiable; that his indorsement was a mere equitable transfer, and it simply conveyed to the assignee a right in the certificates, commensurate with the amount of money advanced by Blumen-bergh; that persons dealing with the holders of such certificates were bound to know the exact extent of the rights of the holder; and that all payments made by the District to such holder were subject to the reserved legal and equitable rights of the claimant. It is also alleged that the defendant had actual and constructive notice of the character of the assignment.
This suit is for the difference between the amount received by claimant from Blumenbergh, and the amount specified in the certificates.
Cases almost identical with the one at bar have been before this court, and are reported in 16 and 17 O. Cls. R. (Neucliatel, 16, Adams, 17, and Laughlin, 17.)
These cases have been decided by this court, differing only from this, in the fact that in none of those cases did the claimant commence proceedings to preserve his rights against the District.
Did the pendency of that suit, with the result indicated as to the Board of Audit, change the rights of the parties, so as to distinguish this proceeding from former adjudications?
*433 The Board of Audit had canceled the certificates before the suit was commenced, and hence in that proceeding as to that, act, there could be no constructive notice to it, of the equities of the claimant in the certificates in controversy. Notice to-the officers of the Board of Public Works was not, in law, notice to the Board of Audit.
While the District of Columbia is a unit in its corporate character, its interests are intrusted to different departments; and if the claimant intended to attach to it the responsibility of’ notice, he ought to have notified the department having jurisdiction of the subject-matter. A verbal notice to the president, and treasurer of the Board of Public Works did not operate a® constructive notice to the Board of Audit.
By reference to the finding, “an accountant of the Board of Audit made up a list of what may be called contested certificates, and that list was used by the Board, but it does not appear whether or not, the certificates now in suit were noted thereon, or when it was made up.”
The Board of Audit was organized in June, 1874, some four-months before proceedings were commenced in the Supreme-Court, and months after the claimant had full knowledge of th©1 fact that Blumenbergh had disposed of the certificates in violation of his obligation. He saw Blumenbergh in the month of March, and did not even mention to him the subject of his claina to the certificates.
The certificates were disposed of by Blumenbergh (and eves in the absence of proof to the contrary the court must assume) to innocent parties, for value, without notice in fact of the restricted character of the assignment. The finding discloses the-fact that such certificates were bought and sold in the market as commercial paper, and whatever the law is, they were regarded in business circles as negotiable paper.
Is not the claimant justly chargeable with gross negligence! He made an unrestricted assignment of the certificates, permitted the Board of Audit to deal with the holders as though; they were the absolute owners, allowed eight months to elapse" from the discovery of the fraud complained of before he sought; to protect himself by judicial proceedings, having in the outset-placed his property in the hands of Blumenbergh, clothed with every indication of ownership and title.
*434 It is a familiar and just principle of law that in cases where •one of two innocent parties must sustain a loss, from the fraud -of a third person, he who reposes confidence in such third person and placed in his hands the means of committing such •fraud, must sustain the loss.
He made a confidant of Blumenbergh, giving him full power, from all external indications, to deal with the property as his own, and if the confidence has been violated, upon the claimant must fall the consequence of the fraud.
The defendant paid the certificates in good faith, and must lie protected, against the effect of the claimant’s negligence, who is now estopped by his laches. ,
As was said in the Adams Case, it may be said in this case, of the claimant:
“It does not appear whether or not he went before the Board and presented his claims to the certificates or not. If he did ¡present them, they were rejected by the Board by payment to other parties, and so we have no jurisdiction of the matter, •since Congress has provided that this court shall have no jurisdiction to consider claims rejected by the Board of Audit. If .lie did not appear when he might and ought to have done so, he is guilty of laches, and must be held to have allowed their payment in that manner without objection. In either case he has m© cause of action.”
It is not necessary to determine the question whether these instruments were negotiable; there lies at the threshold of this •ease principles of law effectually disposing of the rights of the /parties.
The substance of this controversy was before the Supreme 'Court of the United States in the case of Cowdrey v. Vandenburgh (101 U. S. R., 572). The court said:
u The principle is well settled that when the owner of property in any form clothes another with the apparent title or power •of disposition, and third parties are thereby induced to deal with him they shall be protected.”
“ Here the complainants could have expressed in their in-dorsement the purpose of the deposit of the certificates with Blumenbergh, that it was a security for a specified sum of money, -and thus have imparted notice to all subsequent purchasers or assignees that the pledge held only a qualified interest in the ••claim-”
Not having limited the assignment to the amount received H)y the claimant from Blumenbergh, and not having been more *435 diligent in preventing the consummation of the fraud now complained of, we hold that the claimant is estopped from asserting title to the difference between the amount advanced to him by the assignee, and the amount of the certificates; and the District must be protected against the payment of money twice for the same thing. It is therefore adjudged that the petition of the claimant be dismissed.